PARKER, Judge.
Sophia Merritt (the former wife) appeals a nonfinal order the trial court entered in
March 2001 which temporarily abated the alimony obligation of Howard F. Merritt (the former husband) nunc pro tunc to July 15, 1993. Because we conclude that the child support hearing officer did not make a finding or enter a recommended order on alimony in 1993, and had no authority to address alimony issues, we must reverse.
In the 1991 final judgment of dissolution of marriage, the former husband was ordered to pay $50 “per week towards support of the wife.” The former husband also was ordered to pay child support of $50 per week. In early 1993 the former wife filed a supplemental petition for modification of child support. In response to the supplemental petition, the former husband filed an answer, including an affirmative defense, as well as a supplemental counterpetition to modify the final judgment of dissolution of marriage. In his supplemental counterpetition, which alleged a substantial change in financial circumstances, the former husband requested the court to terminate his spousal support obligation, to modify his child support obligation, and to establish a specific visitation schedule with his children.
In April 1993 the parties, through their attorneys, entered into a “stipulation to bifurcate” which the trial court approved. A portion of the stipulation provided:
2. The former Wife is represented by the State of Florida Department of Health and Rehabilitative Services in this proceeding as to issues related to child support only.
[[Image here]]
4. As HRS is only authorized to represent the former Wife in child support issues, this action should be bifurcated to the extent that a child *1208 support order may be entered in Section 99 but a Supplemental Judgment regarding alimony and visitation should be entered in Section 23.
The former wife, through HRS[1] counsel, filed a notice of limited representation and motion to strike the counterpetition which advised the former husband that HRS could only represent the former wife “on the issues of child support and related issues.” The notice also set forth that the “child support hearing officer only has authority to address the issues of child support and not the issues of shared parental responsibility, custody, or visitation.” The notice further advised that the HRS attorney who signed the notice could not accept service on behalf of the former wife and did not have “express authority” to represent the former wife “regarding dissolution or spousal support issues.” The notice finally instructed that the former husband would be required to serve any pleading regarding “spousal support matters” directly on the former wife. Thereafter, although the former husband’s attorney obtained a summons in order to serve the counterpetition on the former wife, service was never effected on her.
On July 15, 1993, a hearing was held before a child support hearing officer. The HRS attorney, the former husband’s attorney, and the parties attended the hearing. At the commencement of the hearing, the parties first agreed that the former husband’s child support would be temporarily reduced as the result of a reduction in his income. The following colloquy then occurred:
[FORMER HUSBAND’S ATTORNEY]: Also there is alimony in this case and we are authorized in this case to represent him regarding alimony. There will be a temporary abatement of all alimonies; starting today, this month.
THE COURT: Today 7/15; and all this is effective today?
[HRS ATTORNEY]: Yes.
The parties then agreed to “readdress the matter” in November of that year.
The child support hearing officer entered her findings and recommended order on the petition for modification. The recommended order set forth a modified child support obligation for the former husband based on the stipulation of the parties discussed at the July 15 hearing. On July 23,1993, the trial court “approved, ratified, confirmed and adopted as the Final Judgment of this court” the hearing officer’s findings and recommendations. No modification of alimony or spousal support is mentioned in either the hearing officer’s findings and recommended order or in the trial court’s order.
In May 2000 the former husband, apparently representing himself, filed a “motion to clarify final judgment of alimony termination.” The motion asserted that at the hearing held on July 15, 1993, the former wife, without legal representation, agreed to the termination of alimony. The motion also alleged that the former wife had never contested the nonpayment of alimony since July 15, 1993, and requested the court to terminate the former husband’s “spousal support effective July 15,1993.”
In February 2001 the former husband, through counsel, filed a “motion for entry of order nunc pro tunc.” The motion al *1209 leged that the former husband had served a supplemental counterpetition to modify his alimony and child support payments in March 1993. He further alleged that at the July 15, 1993, hearing “it was stipulated and agreed to a temporary abatement of all alimony commencing July 15, 1993.” He asserted, however, that “[t]hrough inadvertence or mistake, an order was never entered confirming the agreement for the temporary abatement of alimony as entered on the record.” The former husband sought an order nunc pro tunc to July 15, 1993, “temporarily abating any and all alimony” and “an order directing the Clerk of the Circuit Court to credit the former husband’s support account with all debits for the required payment of alimony since July 15,1993.”
A hearing was held on the former husband’s motions, where the former husband’s original counsel was called as a witness. The attorney testified that it was “everyone’s intention” at the 1993 hearing that a formal court order would be entered abating alimony. The attorney acknowledged that HRS had no authority to deal with the issue of alimony and that the parties intended to abate the alimony issue until the parties could get back into the trial court to be heard on the supplemental counterpetition regarding alimony. The attorney acknowledged that there was no written documentation to support an agreement for termination of alimony.
The former husband testified at the hearing that he had paid no alimony since July 1993 because he believed that “at that date it was abated.” The former husband acknowledged that the clerk’s records reflected an alimony arrearage of approximately $15,000. Following the hearing, the trial court entered its “order temporarily abating alimony nunc pro tunc” to July 15, 1993.
As noted above, at the child support hearing before the child support hearing officer, the former husband’s counsel announced a stipulation regarding abatement of alimony. The former wife’s counsel, an HRS attorney who was limited to representing the former wife on child support issues, agreed that the stipulation was effective July 15, 1993. The child support hearing officer, however, made no findings at the hearing or in her written findings and recommended order regarding alimony, and, as both parties acknowledge, she had no authority to consider alimony issues.
“An order entered nunc pro tunc means ‘now for then’ and refers to a judicial act which memorializes a previously taken judicial act.” Whack v. Seminole Mem’l Hosp., Inc., 456 So.2d 561, 563 (Fla. 5th DCA 1984). The purpose of a nunc pro tunc order “is to correct the record to reflect a prior ruling made in fact but defectively recorded.” De Baun v. Michael, 333 So.2d 106, 108 (Fla. 2d DCA 1976). This court in De Baun explained, “However, where an order does not merely correct clerical errors or omissions, but actually modifies the Substance [sic] of a prior ruling or of itself constitutes a ruling not previously made in fact, it should not be given retrospective effect.” Id. In De Baun, this court reversed a nunc pro tunc order which amended a final judgment of dissolution of marriage; the nunc pro tunc order struck a reservation of jurisdiction regarding property settlement, support, alimony, attorney’s fees, and costs and added a ratification of the parties’ oral stipulation regarding property settlement, custody, and child support.
Here, like in De Baun, the nunc pro tunc order changed the substance of the original order. The child support hearing *1210 officer did not make an oral finding ratifying a stipulation concerning alimony abatement which was left out of her written findings and recommended order. Rather, the hearing officer had no authority to address alimony. Thus, a nunc pro tunc order was inappropriate for a finding that the hearing officer did not make and did not have the authority to make.
We understand the trial court’s desire to rectify this problem. It is a good example of the difficulties that arise when Title IVD counsel cannot provide full and adequate representation for a client. Thus, we do not rule out the possibility that the trial court may be able to provide the former husband with some relief through another avenue. However, we must reverse the trial court’s order which temporarily abates alimony nunc pro tunc to July 15, 1993, and remand for further proceedings on the former husband’s supplemental counterpetition to modify the final judgment of dissolution of marriage.
Reversed and remanded.
ALTENBERND and COVINGTON, JJ., Concur.

. HRS was the Department of Revenue's predecessor as “the state agency responsible for administration of the child support enforcement program, Title IV-D of the Social Security Act, 42 U.S.C. s. 1302.” § 409.2557, Fla. Stat. (1993).